# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Whaleco Inc.,<br><br>     Plaintiff,<br><br> v.<br><br>The Partnerships and Unincorporated Associations Identified on Schedule A,<br><br>     Defendants. | Case No. 24-cv-4534<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff Whaleco, Inc. ("Plaintiff" or "Temu"), hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendants since each of the Defendants directly targets business activities towards consumers in the United States, including the State of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

**THE PARTIES**

4. Whaleco Inc. d/b/a Temu is a Delaware corporation with its principal place of business at 31 Saint James Ave., Suite 355, Boston, Massachusetts 02116-41l01.

5. Whaleco Inc. operates an ecommerce platform at temu.com ("TEMU.COM" or the "TEMU Platform"). The TEMU Platform is also accessible via the Temu app, which can be downloaded on both the Apple App Store and the Google Play Store.

6. The TEMU Platform has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the TEMU Platform from third party sellers in many categories, including clothing, consumer goods, cosmetics, appliances and electronics.

7. TEMU.COM is a closed-loop online marketplace that connects consumers with sellers, manufacturers and brands around the world. The TEMU Platform is committed to offering the most affordable quality products to enable consumers and sellers in an inclusive environment. To keep the TEMU Platform a safe and secure shopping environment for consumers, Plaintiff and its affiliates also provide trust and safety services to curate sellers, and risk control and data security services to protect consumers' personal and payment information.

8. Plaintiff, through its affiliate, Five Bells Limited, is the exclusive licensee of all rights, title, and interest in and to the TEMU word marks and TEMU design marks (collectively, the "TEMU Marks") identified in the below chart.

| Mark | Registration No. | Products/Services |
|---|---|---|
| TEMU (logo) | 7,145,476 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |
| TEMU | 7,157,165 | Various downloadable software for online shopping in Class 9. |
| TEMU (logo) | 7,157,220 | Various downloadable software for online Shopping in Class 9. |
| TEMU | 7,164,306 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |
| TEMU | 7,329,132 | Advertising services; development of marketing strategies, concepts and tactics, namely, audience development, brand awareness, online community building and digital word of mouth communications; providing business information; marketing services; systemization of |

|  |  | information into computer databases; sales promotion for others in Class 35. |

9. The registrations are valid, subsisting, unrevoked, and uncancelled pursuant to 15 U.S.C. § 1065. The registrations for the TEMU Marks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the TEMU Marks pursuant to 15 U.S.C. § 1057(b). Genuine and authentic copies of the U.S. federal trademark registration certificates for the TEMU Marks are attached as **Exhibit 1**.

10. The TEMU Platform has enjoyed tremendous success in the U.S. market. More than one year after its launch, the TEMU app surpassed 100 million downloads on the Google Play Store alone and has been one of the most downloaded free applications in both the Google Play Store and the Apple App Store.

11. Plaintiff maintains quality control standards for all TEMU sites and applications. The Temu app is available for download through verified app stores, such as the Apple App Store and Google Play. True and correct screenshots of Plaintiff's genuine temu.com website are attached as **Exhibit 2.**

12. The TEMU Marks have been widely promoted throughout the globe including within the United States. Consumers, potential consumers, and other members of the public not only associate Plaintiff's marketplace with exceptional quality, style, and affordable prices, but also recognize Plaintiff's marketplace in the United States originates exclusively with Plaintiff.

13. The TEMU Marks have never been assigned or licensed to any of the Defendants in this matter.

14. The TEMU Marks are a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

15. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the TEMU Marks by working with key influencers and content creators, advertising on social media, and purchasing commercial ad spots, including its 2023 and 2024 "Shop Like a Billionaire" Super Bowl ads, which have been viewed over 1 billion times.

16. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's rights in the TEMU Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

17. In or around May 2024, Plaintiff identified the TEMU Marks being used in connection with the certain domain names, URLs, applications and/or unauthorized coupons and promotions identified in Schedule A to the Complaint (collectively the "Infringing Domains"). Defendants reproduced, displayed, and/or distributed the TEMU Marks in connection with the Infringing Domains without authorization or license from Plaintiff.

18. Defendants' use of the TEMU Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of products and services through the Infringing Domains is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

19. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the TEMU Marks in connection with the advertisement, offer for download, unauthorized applications, services and products, through the Internet. The Infringing Domains featuring the TEMU Marks and offer application downloads, coupons and

other Temu related content that are not authentic or associated with genuine Temu applications or websites. Plaintiff did not develop, inspect, or publish the websites or their applications, and did not approve them for distribution. Each Infringing Domain offers products and/or services to the United States, including Illinois, and, on information and belief, each Defendant has completed downloads, offers or other e-commerce transactions into the United States, including to Illinois residents.

20. Defendants go to great lengths to conceal their true identities, registering domain names using privacy shields, utilizing rogue registration and hosting applications, and fail to publish contact information on their websites.

21. Defendants owning and/or operating the Infringing Domains have used the TEMU Marks in their domain names, website content or applications without authorization, to create a false association with Temu and deceive consumers and is irreparably harming Plaintiff. True and correct screenshots of the Infringing Domains are attached as **Exhibit 3**.

22. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of creating counterfeit websites or applications that infringe upon the TEMU Marks unless preliminarily and permanently enjoined. Plaintiff has no adequate remedy at law.

**COUNT ONE**
**FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(15 U.S.C. §1114)**

23. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

24. Plaintiff's TEMU Marks and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value to Plaintiff. The TEMU Marks are highly distinctive and have become universally associated in the public mind with

Plaintiff's Temu marketplace and related services. Consumers associate Plaintiff's TEMU Marks with Plaintiff, its Temu platform and Temu brand.

25. Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the TEMU Marks, and the fact that Defendants' websites and applications under the Infringing Domains are marketed and offered using marks which are identical or confusingly similar to Plaintiff's TEMU Marks, Defendants have developed, distributed, offered for sale, and/or offered products or services to the consuming public in direct competition with Plaintiff's offer of genuine Temu product or services under the TEMU Marks, in or affecting interstate commerce.

26. Defendants' use of infringing and counterfeit versions of Plaintiff's TEMU Marks in conjunction with Defendants' unauthorized services or products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the services or products and is likely to deceive the public into believing the unauthorized services or products as being offered by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, causing damage to Plaintiff's reputation, goodwill, and sales.

27. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

28. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. §1125(a))

29. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

30. The unauthorized services and products sold and/or offered for sale by Defendants are of the same nature and type as Plaintiff's marketplace and services offered for sale by Plaintiff and, as such, Defendants' use of the TEMU Marks is likely to cause confusion to the general purchasing public.

31. By misappropriating and using Plaintiff's TEMU Marks and trade names, Defendants has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Infringing Domains and associated content by Plaintiff.

32. Defendants' unlawful, unauthorized, and unlicensed development, distribution, offer for sale, and/or sale of the unauthorized services and products creates express and implied misrepresentations that the services and products were created, authorized, or approved by Plaintiff, all to Defendants' profit and to Plaintiff's damage and injury.

33. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Domains to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## JURY DEMAND

35. Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants in favor of Plaintiff on all counts as follows:

A. A judgment in favor of Plaintiff on all of the claims for relief pleaded herein;

B. An order requiring the domain registries for the Infringing Domains, including, but not limited to, VeriSign, Inc., Registry Services, LLC, Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Plaintiffs' selection, and that the domain name registrars, including, but not limited to, Hostinger, Spaceship, GoDaddy, Cloudflare, 1API GmbH, NameCheap, Inc., and Sav.com LLC (collectively, the "Domain Registrars"), shall take any steps necessary to transfer the Infringing Domains to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Infringing Domains and make them inactive and untransferable;

C. An order requiring the Domain Registrars to disable the name server information for the Infringing Domains so that they are no longer accessible to Internet users for the pendency of this litigation;

D. An order requiring any Content Delivery Networks ("CDN"), such as CloudFlare, as well as any domain hosting company for the Infringing Domains to cease providing infringing content and make the Infringing Domains inaccessible to Internet users for the pendency of this litigation;

E.  An order requiring the current domain name registrar for the Infringing Domains to change the registrar of record for the Infringing Domains from the current domain name registrar to Plaintiff's registrar of choice;

F.  An order that Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the TEMU Marks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any website, applications, or any domain names;

   b.  engaging in any act of federal, state, or common law trademark infringement or unfair competition that would damage or injure Plaintiff; and

   c.  encouraging, participating in or assisting in any of the above activities;

G.  An order that the Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein and that the amount of damages for infringement of Plaintiff's TEMU Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

H.  In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the TEMU Marks;

I.  That Plaintiff be awarded reasonable attorneys' fees and costs; and

J.  That Plaintiff be granted such other and further relief as the court deems just and proper.

Dated: May 31, 2024                    Respectfully submitted,

/s/ Shengmao Mu
SHENGMAO MU
**WHITEWOOD LAW LLC**
57 West, 57th Street
3rd and 4th Floors
New York, NY, 10019
Tel: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*