**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Whaleco Inc.,<br><br>                Plaintiff,<br><br>    v.<br><br>The Partnerships and Unincorporated Associations Identified on Schedule A,<br><br>                Defendants. | Case No. 24-cv-4534<br><br>**Presiding: Hon. Manish S. Shah**<br>**Magistrate: Hon. Keri L. Holleb Hotaling** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY**

Plaintiff has filed this trademark infringement action against Defendants based on Defendants' advertisement, marketing, distribution, offering for sale, and/or sale of counterfeit apps, counterfeit services, or unauthorized coupons and promotions, through various websites/webstores designed to mislead consumers that the products and/or services offered are genuine TEMU products and/or services, which infringe Plaintiff's TEMU Marks in the Exhibit 1 to the Complaint. Plaintiff submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), wherein Plaintiff further seeks expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II.  STATEMENT OF FACTS ................................................................................................ 1

    A.  Plaintiff's Trademarks and Products .................................................................... 1

    B.  Defendants' Unlawful Activities. ......................................................................... 2

    C.  Jurisdiction ........................................................................................................... 3

III.   ARGUMENT. ................................................................................................................... 4

    A.  Legal Standard Governing Requests for a Temporary Restraining Order. ........................... 4

    B.  Plaintiff Will Likely Succeed on the Merits. ....................................................... 5

    C.  There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary and Emergency Relief. ........................................................... 7

    D.     The Balance of Harms Weighs in Plaintiff's Favor. ....................................................... 8

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. ........................................... 9

    A.  Temporary Restraining Order Is Necessary and Appropriate Here. .................................. 9

V.  PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY. .......................................... 10

VI.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF. ......................................... 10

VII.  CONCLUSION. .............................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abbott Labs. v. Mead Johnson & Co.*,
971 F.2d 6 (7th Cir. 1992) .................................................................................................... 5

*AutoZone, Inc. v. Strick*,
543 F.3d 923 (7th Cir. 2008) ................................................................................................ 6

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*,
235 F.3d 1041 (7th Cir. 2000) .............................................................................................. 5

*Burger King Corp. v. Majeed*,
805 F. Supp. 994 (S.D. Fla. 1992) ....................................................................................... 8

*CAE, Inc. v. Clean Air Eng'g, Inc.*,
267 F.3d 660 (7th Cir. 2001) ................................................................................................ 6

*Christian Dior Couture, S.A. v. Lei Liu et al.*,
2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ................................................. 4

*Deckers Outdoor Corporation v. The Partnerships, et al.*,
No. 15-cv- 3249 (N.D. Ill. Apr. 4, 2015) ...................................................................... 9, 10

*Eli Lilly & Co. v. Natural Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) ................................................................................................ 7

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*,
560 F.2d 1325 (7th Cir. 1977) .............................................................................................. 7

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
612 F.2d 1018 (7th Cir. 1979) .............................................................................................. 7

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
846 F.2d 1079 (7th Cir. 1988) .............................................................................................. 7

*Krause Int'l Inc. v. Reed Elsevier, Inc.*,
866 F. Supp. 585 (D.D.C. 1994) .......................................................................................... 8

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*,
929 F. Supp. 473 (D.D.C. 1996) .......................................................................................... 8

*Microsoft Corp. v. Rechanik*,
249 F. App'x 476 (7th Cir. 2007) ......................................................................................... 5

*Monster Energy Co. v. Chen Wensheng*,
136 F. Supp. 3d 897 (N.D. Ill. 2015) ................................................................................. 11

*Monster Energy Co. v. Zheng Peng*,
Case No. 17-cv-414, 2017 WL 47732769 (N.D. Ill. Oct. 23, 2017) ......................................... 4

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340, 98 S. Ct. 2380 (1978)...................................................................................... 10

*Promatek Indus., Ltd. v. Equitrac Corp.*,
300 F.3d 808 (7th Cir. 2002) ................................................................................................. 4

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) ................................................................................................ 10

*Re/Max N. Cent., Inc. v. Cook*,
272 F.3d 424 (7th Cir. 2001) ................................................................................................. 7

*Ty, Inc. v. Jones Grp., Inc.*,
237 F.3d 891 (7th Cir. 2001) ................................................................................................. 8

*Vance v. Rumsfeld,*
No. 1:06-cv-06964, 2007 U.S. Dist. Lexis (N.D. Ill. Dec. 21, 2007) ..................................... 10

## Statutes

15 U.S.C. § 1051........................................................................................................................ 3

15 U.S.C. § 1114(1) ................................................................................................................... 5

15 U.S.C. § 1116(a) ............................................................................................................... 7, 9

15 U.S.C. § 1125(a) ................................................................................................................... 5

28 U.S.C. § 1331....................................................................................................................... 3

28 U.S.C. § 1338(a)–(b)............................................................................................................ 3

28 U.S.C. § 1391....................................................................................................................... 4

## Rules

Federal Rule of Civil Procedure 26(b)(2) ................................................................................ 10

Federal Rule of Civil Procedure 4(k)(2) .................................................................................... 4

Federal Rule of Civil Procedure 65(c) ...................................................................................... 10

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for 1) Federal Trademark Counterfeiting and Infringement and 2) Unfair Competition and False Designation of Origin. Defendants are engaged in, *inter* ala, the advertisement, marketing, distribution, offering for sale, and the sale of counterfeit apps, counterfeit services, or unauthorized coupons and promotions, through various websites/webstores designed to mislead consumers that the services offered are genuine TEMU products and/or services (the "Infringing Products and/or Services"), that infringe Plaintiff's TEMU Marks identified on Exhibit 1. Further, Defendants attempt to avoid liability by going to great lengths to conceal their identity and the full scope and interworking of their operations, while disguising as entities associated with or authorized by Plaintiff. Plaintiff is forced to file this action to combat Defendants' continued infringement of the TEMU Marks, as well as to protect unknowing consumers from purchasing the Infringing Products and/or Services or falling into Defendants' online scams. Defendants' ongoing trademark infringement should be restrained. Plaintiff respectfully requests that this Court issue *ex parte* a TRO of the nature discussed herein and order the related expedited discovery requested herein.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademarks and Products

Whaleco, Inc. ("Whaleco") operates an ecommerce platform called TEMU at temu.com ("TEMU.COM" or the "Platform"). The Platform is also accessible via the Temu app, which can be downloaded on both the Apple App Store and the Google Play Store. The Platform has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the Platform from third party sellers across many categories, including clothing, consumer goods, cosmetics, appliances, and electronics.

1

Whaleco, through its affiliate, Five Bells Limited, is the exclusive licensee of U.S. Registrations (U.S. Reg. Nos. 7,157,165, 7,164,306, 7,157,220, 7,145,476, and 7,329,132) for the TEMU word mark and TEMU design mark, which have been used exclusively and continuously by Temu (or its predecessors) since at least as early as 2022 (collectively, the "TEMU Marks"). *See* Declaration of Jake M. Christensen ("Christensen Decl.") at ¶ 3. The TEMU Marks are displayed prominently on the TEMU Platform. Temu has expended considerable resources advertising, marketing, and promoting the TEMU Marks, and these efforts have resulted in substantial downloads the Temu app, traffic to the TEMU.COM site, as well as invaluable consumer goodwill. *Id*. at ¶¶ 6-9.

### B. Defendants' Unlawful Activities.

The primary way in which Defendants advertise infringing goods and services on the Infringing Websites is by displaying the TEMU Marks. Christensen Decl. at ¶¶ 11-12. Plaintiff has confirmed that the sites are accessible and targeted to residents of the United States and the State of Illinois. *Id*. Plaintiff also concluded that the Infringing Domains and Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the TEMU Marks for any reason. *Id*. Monetary damages cannot adequately compensate for ongoing infringement because monetary damages fail to address the loss of control and damage to the TEMU Marks reputation and goodwill. *Id*. at ¶ 13. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement. *Id*. The goodwill and reputation are irreparably damaged when the TEMU Marks are used on websites for services and products not authorized, produced, or offered by Whaleco. *Id*. at ¶ 14. Moreover, brand confidence is damaged, which can result in loss of future sales and market share. *Id*. Unauthorized use of the

2

TEMU Marks dilutes their goodwill and value, and the extent of harm to the TEMU brand's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. *Id.*

Defendants have infringed, and continue to infringe the TEMU Marks. Information regarding Defendants and their infringing activity is attached as Exhibit 3 to the Christensen Declaration. Such information includes Defendants' on-line store names and images of the Infringing Products and/or Services.

On information and belief, Defendants have engaged in fraudulent conduct when registering their on-line storefronts by providing false, misleading, and/or incomplete information. On information and belief, Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling infringing products on e-commerce platforms. On information and belief, such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identity and the full scope and interworking of their operations, and to avoid being shut down.

### C. Jurisdiction

This Court has original subject matter jurisdiction over this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. This Court may properly exercise personal jurisdiction over Defendants because Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive online storefronts identified herein. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores

3

that target U.S. consumers using one or more seller aliases through which Illinois residents can access and/or purchase the Infringing Products and/or Services. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *see also Monster Energy Co. v. Zheng Peng*, Case No. 17-cv-414, 2017 WL 47732769, at *7 (N.D. Ill. Oct. 23, 2017). Defendants are engaging in interstate commerce, committing tortious acts in Illinois, and have wrongfully caused Plaintiff substantial injury in the State of Illinois. Alternatively, this Court has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) if any given Defendant is not subject to the jurisdiction of any state's court of general jurisdiction, because exercising jurisdiction over each Defendant is consistent with the United States Constitution and its laws. Venue is proper pursuant to 28 U.S.C. § 1391.

## III.    ARGUMENT.

### A.  Legal Standard Governing Requests for a Temporary Restraining Order.

A party seeking a TRO must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the TRO is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the non-moving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity,"

4

when it decides whether to grant the injunction. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). This process involves engaging in what the Seventh Circuit Court of Appeals has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* at 12.

### B. Plaintiff Will Likely Succeed on the Merits.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

Here, Plaintiff's TEMU Marks are inherently distinctive and registered with the United States Patent and Trademark Office on the Principal Register. The TEMU Marks have been used exclusively and continuously by Plaintiff (or its predecessors) since at least as early as 2022. Christensen Decl. at ¶ 3. Furthermore, Plaintiff has never licensed or given Defendants the right to use any of the TEMU Marks. *Id.* at ¶ 12.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the TEMU Marks. The result is the same when considered in light of the Seventh Circuit's

5

seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiff has submitted extensive documentation showing that Defendants are selling Infringing Products and/or providing Infringing Services that are not authorized by Plaintiff. *See* Exhibit 3. Both Plaintiff and Defendants advertise their products to consumers via the Internet, targeting consumers searching for genuine Temu Products and Services. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Temu Products and Services from the counterfeit ones. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Temu Products or Services to purchase Counterfeit Products instead. In that regard, Defendants advertise Counterfeit Products using the TEMU Marks. Christensen Decl. at ¶ 11. The TEMU Marks are unique and arbitrary. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Temu Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff is likely to establish a prima facie case of trademark infringement, counterfeiting, and false designation of origin.

**C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary and Emergency Relief.**

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Moreover, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Monetary damages cannot adequately compensate for ongoing infringement because monetary damages fail to address the loss of control and damage to the TEMU Marks, reputation, and goodwill. Christensen Decl. at ¶ 13. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement. *Id*. Temu's goodwill and reputation are irreparably damaged when the TEMU Marks are used on websites for services and products not authorized, produced, or offered by Whaleco. *Id*. at ¶ 14. Moreover, brand confidence is damaged, which can result in loss of future sales and market share. *Id*. Unauthorized use of the TEMU Marks dilutes their goodwill and value, and the extent of harm to the TEMU brand's

7

reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. *Id*. Whaleco is further irreparably harmed by the unauthorized use of the TEMU Marks because infringers take away the ability to control the nature and quality of services. *Id*. at ¶ 15. Loss of quality control over services bearing the TEMU Marks and, in turn, loss of control over its reputation, is neither calculable nor precisely compensable. *Id*.

### D. The Balance of Harms Weighs in Plaintiff's Favor.

As noted, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm, then it must next consider the harm that Defendants will suffer if preliminary relief is granted and balance such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.,* 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Defendants have been profiting, and continue to profit, from the offer for sale and/or sale of Defendants' Infringing Products and/or Services. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating

their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

### A. Temporary Restraining Order Is Necessary and Appropriate Here.

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the TEMU Marks, or substantially similar marks, on or in connection with all ecommerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to Plaintiff's TEMU Marks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the TEMU Marks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell and offer to sell Infringing Products and/or Services. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Deckers Outdoor Corporation v. The Partnerships, et al*., No. 15-cv- 3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting Ex Parte Motion for Temporary Restraining Order).

9

### V. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY.

The U.S. Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld,* No. 1:06-cv-06964, 2007 U.S. Dist. Lexis, at *18 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery, including the Defendants' registration information on 1) the domain registries for the Infringing Domains, including, but not limited to, VeriSign, Inc., Registry Services, LLC, Afilias Limited, CentralNic, Nominet, and the Public Interest Registry; and 2) any Content Delivery Networks ("CDN"), such as CloudFlare, as well as any domain hosting company for the Infringing Domains. The expedited discovery requested herein is limited to only that which is essential to prevent further irreparable harm. The foregoing constitutes good cause for ordering the expedited discovery sought. *See, e.g.*, *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### VI. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF.

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than One Thousand U.S. Dollars ($1,000.00). *See, e.g.*, *Monster Energy Co. v. Chen*

10

*Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015) (declining to increase bond amount above $10,000 absent proffer of competent evidence that such amount is insufficient in light of reasonably expected amount of pecuniary harm to defendants if it turns out that injunctive relief should not have been entered).

And in fact, courts in this district have already granted Plaintiff similar relief in a similar case for $1,000 bond posted, especially in light of Plaintiff not seeking an asset restraint. *See* 24-cv-2050.

## VII. CONCLUSION.

For the reasons set forth above, Plaintiff respectfully requests that this Court enter the requested TRO enjoining Defendants' manufacture, use, offering for sale, selling, and importing the Infringing Products and/or offering Infringing Services, and all colorable imitations thereof. Plaintiff further requests that the Court grant Plaintiff's request for expedited discovery.

Date: June 6, 2024       Respectfully submitted,

By: /s/ Shengmao Mu
Shengmao (Sam) Mu, NY #5707021
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

11